LOUIS HUBING, executor, appellant,

*v.*

LIBERTY TRUST COMPANY, respondent.

[Argued June 20th, 1917.  Decided November 12th, 1917.]

A trust company agreed to assign a mortgage, executed an assignment, and entrusted the papers to a solicitor for delivery and receipt of the consideration.  He fraudulently inserted a description of an additional mortgage in a blank space and collected the amount due on both mortgages.—*Held*, that the case was one of mutual mistake, the trust company meaning to assign only one mortgage, and the purchaser meaning to acquire two; that the purchaser was entitled to rescind and that the trust company was liable upon rescission to repay the whole amount paid by the purchaser to the solicitor.

On appeal from a decree advised by Vice-Chancellor Howell.

*Mr. Frank E. Bradner,* for the appellant.

*Mr. Conover English,* for the respondent.

The opinion of the court was delivered by

SWAYZE, J.

This litigation grows out of two assignments of mortgage purporting to be made by the Liberty Trust Company to Louis Hubing, executor of Henry Kirchner, each purporting to assign two mortgages.  The situation differs somewhat in the two cases.  By the first assignment the trust company appears to assign in consideration of $5,500 (1) a mortgage for $2,500 which I shall call the Courter mortgage, and (2) a mortgage for $3,000 which I shall call the 12th street mortgage.  By the second assignment the trust company appears to assign in consideration of one dollar and other valuable considerations (1) a mortgage for $5,000 reduced to $3,000 which I shall call the

Heidel mortgage, and (2) a mortgage for $3,000 which I shall call the Wolbert mortgage. The execution of both assignments by the trust company through its proper officers is admitted. The payment by Hubing to Crocker in perfect good faith of $5,500 and some interest for the first assignment and $6,000 and some interest for the second assignment is admitted. The trust company says that it meant only to assign the Courter mortgage by the first assignment and the Heidel mortgage by the second assignment; and that it never made the covenants in either assignment. The charge is that one Roland D. Crocker, a solicitor, fraudulently inserted the description of one mortgage and the covenant in each assignment. According to both parties there is a clear case of mistake. The trust company meant to assign only one mortgage by each assignment and did not mean to make any covenants. Hubing meant to acquire two mortgages by each assignment and to have the protection of covenants. Their minds never met. As the mistake was mutual, a rescission must follow if restitution can be made. The only difficulty seems to be that caused by foreclosure pending the litigation, and this is covered by a stipulation that the foreclosure proceedings shall not affect anybody's rights. Hubing is entitled to have at least some of his money back upon transferring his rights under the mortgages to the trust company. The question is how much ought the trust company in equity to restore. As to the amount received on the first assignment, the case is simple. The assignment itself acknowledges the receipt of $5,500. It is suggested that this sum was inserted by Crocker after the assignment had been executed, but it is noticeable that counsel for the defendant did not examine Watson, the former president of the trust company, who had executed the assignment, as to whether the statement of the consideration as $5,500 was in the assignment when it was executed; and after Watson had testified that the description of the 12th street mortgage and the covenant were not in the paper, he testified that to the best of his knowledge and belief everything else was in the paper when he signed it. It may or may not be significant that Crocker, on the date of this assignment, sent the Liberty Trust Company checks for two mortgages,

one for $5,167.17 for a mortgage on Aschenbach property, North 12th street, and one for $2,576.25 for the Courter mortgage. It is at any rate clear that the trust company must be held to have received at that time the $5,500 which it acknowledges by the assignment that it had received.

The second assignment presents a different question. It is conceded that it was properly executed as an assignment of the Heidel mortgage, and the amount due on the Heidel mortgage prior to the assignment seems from the trust company letter of November 17th, 1913, to have been $5,000. It is at any rate unquestioned that Crocker was authorized to deliver the assignment and receive from the purchaser the amount due thereon. The question is whether the trust company is bound by the receipt of $6,000 for the two mortgages. Crocker had no express authority to receive more than the amount due on the Heidel mortgage. We think, however, that the trust company, by trusting Crocker as its agent with the delivery of the assignment and the receipt of the money, put it in his power to commit the fraud; that the fraud was committed in the execution of his agency; and that the company is responsible to Hubing for the loss he suffered. The case is within the principle of *Mick* v. *Corporation of Royal Exchange, 87 N. J. Law 607*, and the language of this court in *Corona Kid Co.* v. *Lichtman, 84 N. J. Law 363*.

Hubing is entitled to recover what he has paid with interest upon transferring to the trust company the property he has received. The decree must be reversed and the record remitted in order that a decree may be entered in accordance with our opinion. The complainant is entitled to costs in both courts.

*For affirmance*—PARKER, WILLIAMS—2.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER. —9.